UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BILLY NAVARRE CERTIFIED USED CAR IMPORTS L.L.C., BILLY NAVARRE IMPORTS, INC., LA DIRECT AUTO DEALERSHIP, LLC, NAVARRE CHEVROLET, INC., NAVARRE MANAGEMENT, L.L.C. AND NAVARRE NISSAN LLC, *PLAINTIFFS* | § § § § § § § § § § § § § § | CASE NO. |
| V. | | |
| CLAREMONT PROPERTY CO. *DEFENDANT* | | |

# COMPLAINT

Billy Navarre Certified Used Car Imports, L.L.C. ("BNCUC"), Billy Navarre Imports, Inc. ("Navarre Honda"), LA Direct Auto Dealership ("LA Direct"), Navarre Chevrolet, Inc. ("Navarre Chevrolet"), Navarre Management, L.L.C. ("Navarre Management"), and Navarre Nissan LLC ("Navarre Nissan") (collectively, "Plaintiffs") file this Complaint against Claremont Property Co., ("Claremont" or "Defendant"), and respectfully represent:

**PARTIES, JURISDICTION, AND VENUE**

1. This action is filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and Federal Rule of Civil Procedure 57. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 2201 as well as 28 U.S.C. § 1332(a)(1) and *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), because there is diversity of citizenship between Plaintiffs, on the one hand, and Claremont, on the other hand, as set forth below, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. BNCUC is a Louisiana limited liability company, whose registered office is located in Lake Charles, Louisiana and whose sole member, Ryan Navarre, is an individual domiciled in the state of Louisiana, and is therefore a citizen of Louisiana for the purposes of diversity jurisdiction. Accordingly, BNCUC is a citizen of Louisiana for purposes of diversity jurisdiction.

3. Navarre Honda is a corporation incorporated under the laws of Louisiana that maintains its principal place of business in Lake Charles, Louisiana. Accordingly, Navarre Honda is a citizen of Louisiana for purposes of diversity jurisdiction.

4. LA Direct has its principal place of business in Lake Charles, Louisiana and is therefore a citizen of Louisiana for the purposes of diversity jurisdiction. Accordingly, LA Direct is a citizen of Louisiana for purposes of diversity jurisdiction.

5. Navarre Chevrolet is a corporation incorporated under the laws of Louisiana that maintains its principal place of business in Lake Charles, Louisiana. Accordingly, Navarre Chevrolet is a citizen of Louisiana for purposes of diversity jurisdiction.

6. Navarre Management is a Louisiana limited liability company, whose registered office is located in Lake Charles, Louisiana and whose sole member, Ryan Navarre, is an individual domiciled in the state of Louisiana, and is therefore a citizen of Louisiana for the purposes of diversity jurisdiction. Accordingly, Navarre Management is a citizen of Louisiana for purposes of diversity jurisdiction.

7. Navarre Nissan is a Louisiana limited liability company, whose registered office is located in Lake Charles, Louisiana and whose sole member, Ryan Navarre, is an individual domiciled in the state of Louisiana, and is therefore a citizen of Louisiana for the purposes of diversity jurisdiction. Accordingly, Navarre Nissan is a citizen of Louisiana for purposes of diversity jurisdiction.

8. Upon information and belief, Claremont is a corporation organized under the laws of Texas that maintains its principal place of business in Bellaire, Texas. Defendant is therefore a citizen of Texas for purposes of diversity jurisdiction.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving raise to Plaintiffs' claims against Defendants occurred in this district.

## BACKGROUND INFORMATION

10. Plaintiffs own and operate several auto dealerships in Lake Charles and Sulphur, LA (the "Properties").

11. In August of 2020, Hurricane Laura swept through Lake Charles and the surrounding area, causing considerable damage to the Properties and resulting in the immediate need for repairs. The repairs included (but were not limited to) repairs to the Properties' roofing, ceilings and insulation, lighting, electrical, plumbing, and structural components (the "Hurricane Repairs").

12. Less than two days after Hurricane Laura, Claremont approached Plaintiffs and offered to perform the Hurricane Repairs. On or around August 29, 2020, and September 4, 2020, Plaintiffs and Claremont entered into work authorization agreements (the "Agreements") whereby Claremont agreed make the necessary Hurricane Repairs and provide the required materials, equipment, services, and labor for completion of the Hurricane Repairs (the "Project"). Plaintiffs agreed, among other things, to assign insurance proceeds to Claremont for the amount of any and all work done on the Property in exchange.

13. During the preliminary discussions between Plaintiffs and Claremont, Claremont represented that it was qualified to, and capable of, performing the Project and Hurricane Repairs.

Claremont further represented that it would complete the Hurricane Repairs in a good and workmanlike manner, including providing the materials and equipment necessary to complete the Project, and by providing invoices to Plaintiff every two weeks for any work that Claremont completed.

14. Upon information and belief, at the time Claremont initially approached Plaintiffs regarding the Hurricane Work, Claremont was not properly licensed to contract for, or perform, a construction project in Louisiana, in violation of La. Stat. §§ 37:2160 and 37:2150.1, and, upon information and belief, Claremont did not obtain a Louisiana commercial contractor's license until July 20, 2022, which was after the date of execution of both the Agreements and after Claremont commenced work on the Project.

15. Furthermore, Claremont did not perform the Project as required by the Agreement. For instance, the Agreements required Claremont to provide the labor, equipment, and materials for the Project. However, Claremont did not provide a portion of the necessary equipment and Plaintiffs were forced to procure the same despite Claremont's representations. The Agreements also called for Claremont to provide invoices to Plaintiffs for any work performed at least every two-weeks, which Claremont repeatedly disregarded. Additionally, a portion of the work that Claremont performed was not completed in a good and workman like manner, which caused additional damage to the Properties.

16. Claremont's conduct caused delays to the Project, caused damage to the Properties, and harmed Plaintiffs' businesses. Further, as a result of Claremont's performance of the Project, Plaintiffs were required to hire replacement contractors to carry out the remainder of the Hurricane Repairs and to mitigate their damages.

17. And yet, despite the facts that Claremont did not perform the Hurricane Repairs pursuant to the Agreements and did not provide certain equipment for the Project, Claremont has made repeated demands for payment to Plaintiffs on the grounds that Claremont is entitled to Plaintiffs' insurance settlement.[1] Importantly, Claremont did not provide invoices to Plaintiffs every two weeks and instead demanded a lump sum payment from Plaintiffs. Furthermore, in these demands for payment, Claremont is blatantly invoicing Plaintiffs for equipment that Claremont did not provide, but rather that Plaintiffs had to acquire due to Claremont's failures.

18. In response, Plaintiffs have demanded that Claremont account for the work and provide detailed invoices and purchase orders for the work that Claremont actually performed. Furthermore, Plaintiffs have provided evidence to Claremont of the fact that Claremont's demands include demands for equipment that Claremont simply did not provide, as Plaintiffs have invoices and other documentation establishing that Plaintiffs, rather than Claremont, provided the equipment that Claremont now seeks payment for.

19. Plaintiffs have incurred, and will continue to incur, substantial expense in completing the Project and/or finishing and/or remediating Claremont's work on the Property.

20. Plaintiffs are continuing to investigate the actions of Claremont and reserve the right to further amend and supplement this Complaint in the event additional claims and causes of action are determined through documents and information to be obtained through discovery.

### COUNT I: FAILURE TO PERFORM AND BAD FAITH BREACH OF CONTRACT

21. Plaintiffs reallege and reincorporate Paragraphs 1 through 20, above, by this reference as though fully set forth herein.

---

[1] To date, Plaintiffs have paid over $7.1 million to Claremont for the work that Claremont performed and provided evidence of completion to Plaintiffs. Additionally, on or around December 29, 2023, Plaintiffs sent Claremont an additional $1.3 million

22. Plaintiffs and Claremont entered into the Agreements on or around August 29, 2020, and September 4, 2020, pursuant to which Claremont agreed to timely and competently perform the Project, timely provide invoices, and provide the required labor, materials, and equipment for the Project. A copy of one such Agreement is attached here as "**Exhibit "A**."

23. Despite this fact, Claremont breached the Agreements by failing to timely and competently perform as required thereunder, provide timely invoices, and provide the necessary labor, materials, and equipment for the Project.

24. Claremont's breach caused damage harm to Plaintiffs, including, without limitation damages for hiring a replacement contractor to perform the required repairs and offset Claremont's work, damages for procuring the necessary equipment for the Project, and other damages that the Properties suffered due to the delay in making the Hurricane Repairs.

25. In accordance with La. C.C. art. 2013, because Claremont has failed to perform its obligations under the Agreements, Plaintiffs are entitled to dissolution of the Agreements.

26. "Upon dissolution of a contract, the parties shall be restored to the situation that existed before the contract was made." La. C.C. art. 2018.

27. Further, La. C.C. art. 1997 provides: "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." An obligor is in bad faith if that obligor "intentionally and maliciously fails to perform his obligations." *Id.*, at cmt. (b). Pursuant to La. C.C. art. 1997, then, because Claremont is in bad faith, Plaintiffs are entitled to all resulting damages, whether foreseeable or not, including lost revenue and attorneys' fees.

28. Plaintiffs' damages include, without limitation:

      a. Damage to the Properties as a result of Claremont failing to timely complete the Hurricane Repairs;

      b. Costs incurred by Plaintiffs to procure the necessary equipment;

      c. Costs incurred by Plaintiffs to hire a replacement contractor to repair the work Claremont did perform and to otherwise complete Claremont's scope of work pursuant to the Agreements; and

29. Attorney's fees and legal costs incurred in the instant matter.

## COUNT II: RESCISSION

30. In addition, and/or the alternative, Plaintiffs reallege and reincorporate Paragraphs 1 through 20, above, by this reference as though fully set forth herein.

31. Plaintiffs seek to rescind the Agreements for fraud or, alternatively, error.

32. Louisiana law provides that "[c]onsent may be vitiated by error, fraud, or duress." La. C.C. art. 1948.

### *Fraud*

33. "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. art. 1953.

34. "Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent." La. C.C. art. 1955.

35. In or about August 29, 2020, prior to the parties' execution of the Agreements, and at other relevant times, Claremont represented that it was capable, competent, and qualified to

contract for the Project, and specifically represented that Claremont had vast experience doing similar hurricane work around the country.

36.     At the time Claremont made the Representations, Claremont knew or should have known that it did not carry the licensure necessary under Louisiana Law to perform the Project, that it had no intention to complete the Project as required by the Agreement, and that it did not possess the necessary skills and/or equipment to complete the Project in a good and workmanlike manner.

37.     Furthermore, on or around November 13, 2023 Claremont sent demands for payment to Plaintiffs, alleging that Plaintiffs owed Claremont for certain equipment that Claremont did not provide. Claremont also demanded payment for work that Claremont did not actually perform, alleging that Plaintiffs have an outstanding balance of approximately $7,794,736.54.

38.     Claremont intended for Plaintiffs to rely on the representations during the parties initial negotiations, which Plaintiffs did, resulting in Plaintiffs decision to enter the Agreements and permit Claremont to investigate, appraise, evaluate, report, and perform the work related to the Project. Furthermore, in repeatedly invoicing Plaintiffs for equipment that Claremont did not provide and for work that Claremont did not perform, Claremont intended for Plaintiffs to rely on Claremont's representations as to the scope of the work performed and materials provided.

39.     On the basis of Claremont's fraud as set forth above, this Court should rescind the Agreements.

*Error*

40.     In addition, and/or the alternative, Plaintiffs seek to rescind the Agreements for error.

41. "Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La. C.C. art. 1949. "Error may concern a cause when it bears on the nature of the contract, or the thing that is the contractual object or a substantial quality of that thing[.]" La. C.C. art. 1950.

42. La. C.C. arts. 1949-50 first require that the error be one which, had the truth been known, the party in error (Plaintiffs) would not have made the contract. Here, Plaintiffs would not have entered the Agreements with Claremont if Plaintiffs knew that Claremont was not licensed to perform the Project (or otherwise carry out their obligations pursuant to the Agreements), had no intention to perform the Hurricane Repairs, could not provide the required equipment as required by the Agreements, and would subsequently demand payment from Plaintiffs for work and materials that Claremont simply did not provide.

43. Louisiana law further requires that the party not in error (here, Claremont) knew or should have known that the subject matter of the error was essential to the other party. Certainly, Claremont knew (or should have known, given its vast experience in this field) that Plaintiffs would rely on the representations regarding Claremont's capabilities in deciding to hire Claremont to perform the Hurricane Repairs.

44. Where, as here, the requirements of La. C.C. arts. 1949-50 are met, the consent of the party in error (Plaintiffs) is vitiated, and the court may grant rescission based on that lack of lawful consent. *See* La. C.C.P. art. 1952.

### *Damages*

45. In addition to seeking an order rescinding the Agreements for fraud or, alternatively, error, Plaintiffs seek damages from Claremont pursuant to La. C.C. art. 1994, et seq.

46. La. C.C. art. 1995 provides: "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived."

47. Further, La. C.C. art. 1997 provides: "[a]n obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." An obligor is in bad faith if that obligor "intentionally and maliciously fails to perform his obligations." *Id.*, at cmt. (b). Pursuant to La. C.C. art. 1997, then, because Claremont is in bad faith, Plaintiffs are entitled to all resulting damages, whether foreseeable or not, including lost revenue and attorneys' fees.

48. Plaintiffs' damages include, without limitation:

   a. Damage to the Properties as a result of Claremont failing to timely complete the Hurricane Repairs;

   b. Costs incurred by Plaintiffs to procure the necessary equipment;

   c. Costs incurred by Plaintiffs to hire a replacement contractor to repair the work Claremont did perform and to otherwise complete Claremont's scope of work pursuant to the Agreements; and

   d. Attorney's fees and legal costs incurred in seeking detailed accounting of Claremont's work and responding to Claremont's demands for payment including without limitation fees and costs incurred in the instant matter.

49. Finally, if the Agreements are rescinded for fraud, Plaintiffs seeks attorneys' fees from Claremont pursuant to La. C.C. art. 1958.

## COUNT III: ABSOLUTE NULLITY

50. In addition, and/or the alternative, Plaintiffs reallege and reincorporate Paragraphs 1 through 20, above, by this reference as though fully set forth herein.

51. La. R.S. § 37:2150, et seq., provides a comprehensive licensing scheme for general contractors desiring to practice their trade in Louisiana. The express purpose of the statute is the "protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the contracting vocation, and the affording of such persons of an effective and practical protection against the incompetent, inexperience, unlawful, and fraudulent acts of contractors with whom they contract." La. R.S. § 37:2150.

52. Further, "[i]t shall be unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor under the provisions of this Chapter." *Id*. at § 2160(A)(1).

53. La. C.C. art. 2030 declares that "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral."

54. As Claremont did not have the legal authority to render services as a contractor in Louisiana at the time of the Agreements, and specifically did not possess the licensure necessary to carry out the Project, the Agreements are absolutely null. *CCAPS, LLC v. HD & Assocs., LLC*, No. CV 21-2195, 2023 WL 1965087 (E.D. La. Feb. 13, 2023) (granting a property owner's motion to dismiss a contractor's breach of contract claim where the contractor was not licensed to perform the repairs at the time of the contract's execution); *First Hartford Realty Corp. v. Omega Contractors, Inc.,* Civ. A. No. 11-2294, 2014 WL 1329899 (E.D. La. April 2, 2014) ("Every court to consider the argument has held that the failure of a contractor to obtain a contractor's license renders a construction contract absolutely null.").

55. As a result, the Agreements entered into by Plaintiffs and Claremont in this matter should be deemed never to have existed and the parties should be restored to their original positions. *See* La. C.C. art. 2033.

## COUNT IV: DECLARATORY JUDGMENT

57. In addition, and/or the alternative, Plaintiffs reallege and reincorporate Paragraphs 1 through 20, above, by this reference as though fully set forth herein.

57. Based on these allegations, Plaintiffs seek a declaration of the following:

   a. A declaratory judgment against Claremont declaring that Claremont breached the Agreements when it failed to properly perform the Hurricane Repairs and when Claremont failed to provide the required equipment for the Hurricane Repairs;

   b. A declaratory judgment against Claremont declaring that because of Claremont's underlying breach of the Agreements, the Agreements are unenforceable;

   c. Additionally, or alternatively, a declaratory judgment in favor of Plaintiffs and against Claremont declaring that the Agreements are rescinded for fraud and/or error;

   d. Additionally, or alternatively, a declaratory judgment in favor of Plaintiffs and against Claremont declaring that the Agreements absolutely null due to Claremont's insufficient licensing at the time of contracting with Plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that Defendant Claremont be cited to appear and answer, and Plaintiffs respectfully request that the Court enter Judgment against Claremont as follows:

1. Enter judgment against Defendant for Failure to Perform and Bad Faith Breach of Contract; Rescission; and Absolute Nullity, and award Plaintiffs their requested relief including dissolution of the Agreements, recission for fraud and error, a finding of bad faith, and damages in an amount to be determined at trial;

2. Enter judgment against Defendant declaring:

   a. A declaratory judgment against Claremont declaring that Claremont breached the Agreements when it failed to properly perform the Hurricane Repairs and when Claremont failed to provide the required equipment for the Hurricane Repairs;

   b. A declaratory judgment against Claremont declaring that because of Claremont's underlying breach of the Agreements, the Agreements are unenforceable;

   c. Additionally, or alternatively, a declaratory judgment in favor of Plaintiffs and against Claremont declaring that the Agreements are rescinded for fraud and/or error;

   d. Additionally, or alternatively, a declaratory judgment in favor of Plaintiffs and against Claremont declaring that the Agreements absolutely null due to Claremont's insufficient licensing at the time of contracting with Plaintiffs.

3. Award Plaintiffs their costs, disbursements, and attorneys' fees in this lawsuit, including interest; and

4. Award any other relief this Court deems just and proper.

Dated: January 19, 2023.                    Respectfully submitted,

                                            **HOLLAND & KNIGHT LLP**

                                            By: /s/ *L. Bradley Hancock*
                                            L. Bradley Hancock
                                            LA Bar No. 27234
                                            brad.hancock@hklaw.com
                                            811 Main Street, Suite 2500
                                            Houston, Texas 77002-5227
                                            713-821-7000 (Telephone)
                                            713-821-7001 (Facsimile)
                                            **COUNSEL FOR PLAINTIFFS**