UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

BILLY NAVARRE CERTIFIED USED CAR : CASE NO. 2:24-CV-00085
IMPORTS L L C ET AL

VERSUS : JUDGE JAMES D. CAIN, JR.

CLAREMONT PROPERTY CO : MAGISTRATE JUDGE LEBLANC

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 41] filed under Federal Rule of Civil Procedure 12(b)(6) by defendant Claremont Insurance Company ("Claremont"). Plaintiffs Billy Navarre Certified Used Car Imports, LLC; Billy Navarre Imports, Inc.; Lake Charles Auto Plaza, Inc. d/b/a Louisiana Direct Auto; Navarre Chevrolet, Inc.; Navarre Management, LLC; and Navarre Nissan LLC (collectively, "Navarre") oppose the motion. Doc. 43.

### I.
#### BACKGROUND

This suit arises from construction work agreements formed in the days following Hurricane Laura, which struck Southwest Louisiana on August 27, 2020. Navarre owns and operates several dealerships in Lake Charles and Sulphur, Louisiana. It sustained damage to these properties during Hurricane Laura, requiring mitigation and repairs to roofing, ceilings, insulation, lighting, electrical, plumbing, and structural components.

Navarre sued Claremont in this court on January 19, 2024, alleging that the latter had breached the subject work agreements by failing to (1) provide all necessary equipment

for the repairs, (2) provide invoices every two weeks, and (3) complete portions of the repairs in a good and workmanlike manner, which caused additional damage to the properties. Doc. 1, ¶ 16. As a result, Navarre allegedly suffered damages resulting from delays and the poor quality of the work performed by Claremont. *Id.* at ¶ 17. Accordingly, Navarre raised claims of (1) absolute nullity of the contracts, (2) failure to perform and bad faith breach of contracts, (3) rescission of the contracts based on fraud/error, and (4) negligence. *Id.* at ¶¶ 25, 30, 31, 38, 60. It also sought declaratory judgment on Claremont's status as a contractor and a finding that the work agreements are null. *Id.* at ¶ 67.

Claremont sought dismissal of Navarre's claims for breach of contract, negligence, and rescission for fraud and/or error under Federal Rule of Civil Procedure 12(b)(6). Doc. 19. In a ruling dated July 31, 2024, the court noted that the motion was untimely and, as such, construed it as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Doc. 26. It then granted the motion as to Navarre's claim for rescission due to fraud and/or error and denied it in all other respects. *Id.* In dismissing the claim, the court held that Navarre had "failed to provide the required particularity demanded under Rule 9(b)" for a fraud claim and noted in particular the absence of allegations concerning (1) the identity of the Claremont representative on whose statements Navarre relied, (2) the place and manner in which the communications occurred, (3) a description of skills/equipment misrepresented by Claremont, and (4) any details in support of Navarre's claim of fraudulent invoices. *Id.* at 10. The court granted Navarre's request for leave to amend, however, and set an amendment deadline for August 14, 2024. *Id.* at 12.

On August 14, 2024, Navarre filed an opposed motion to extend its deadline for amending the complaint. Doc. 29. Two weeks later, while that motion was still pending before the magistrate judge, Navarre filed its Second Amended Complaint. Doc. 31. Claremont then moved to strike the complaint under Federal Rule of Civil Procedure 15(a)(2), on the grounds that it was untimely and filed without leave of court or consent from Claremont. Doc. 33. The court denied the motion to strike and retroactively extended Navarre's deadline for amending the complaint by two weeks, "without prejudice to Claremont's right to attack the substantive merit of the amendment by appropriate motion." Doc. 40. Claremont then filed the instant motion to dismiss, asserting that the rescission for fraud and/or error claim in the Second Amended Complaint still falls short of Rule 9(b)'s heightened pleading requirements. Doc. 41. Navarre opposes the motion, maintaining that it has pointed to specific communications from identified individuals, framed within the allegations as misrepresentations on which Navarre relied to its detriment. Doc. 43.

## II.
## LAW & APPLICATION

### A. Legal Standards

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as

matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Application

Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard on fraud claims, requiring "that a party state with particularity facts supporting each element of fraud." *Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *2 (N.D. Tex. Aug. 16, 2011) (citing *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003)). In the Second Amended Complaint, Navarre makes a claim for rescission based on fraud/error due to (1) alleged misrepresentations by Claremont representatives regarding Claremont's qualifications and ability to perform the contemplated hurricane repairs in a good and workmanlike manner

and whether Claremont had the appropriate licenses to perform these repairs and (2) Claremont's alleged failure to provide promised equipment and decision to fraudulently invoice Navarre for some of this equipment (namely, computers).

In support of its claim Navarre cites statements made by either Keeley or Shannon Megarity, who are brothers and serve, respectively, as Claremont's president and national accounts manager. *See* doc. 31, ¶ 15. Navarre alleges that, on August 28, 2020, "the Megaritys, on behalf of Claremont, specifically represented to Plaintiffs (via [Ryan] Navarre and [Vicki] Saxby)[1], that Claremont was qualified and able to perform the necessary Hurricane Repairs on each of the Properties in a good and workmanlike manner, and that Claremont was properly license and otherwise qualified to provide contracting services." *Id*. Navarre further alleges that these "face-to-face discussions" took place "while the Megaritys, Mr. Navarre, and Ms. Saxby examined the Properties and discussed the scope of repairs." *Id.* at ¶ 16. According to Navarre, Mr. Navarre emphasized during these discussions "that Claremont needed [to] be qualified to perform the Hurricane Repairs in accordance with all federal, state, and local regulations" and the Megaritys responded with assurances that they were.[2] *Id.* at ¶ 17. However, Claremont did not have a Louisiana commercial contractor's license at the time and did not obtain one until July 2022. *Id.* at ¶ 25. Navarre alleges that the Megaritys failed to reveal that Claremont was not licensed to perform contracting work in Louisiana, and that Navarre would not have

---

[1] Ryan Navarre is the sole member of the plaintiff LLCs. Doc. 31, ¶¶ 2, 6, 7, 9, 10. He and Ms. Saxby "are responsible for the managerial and financial oversight over each Plaintiff." *Id.* at ¶ 15, n. 2.
[2] Keeley Megarity also sent an email to Ms. Saxby on August 28, before the walkthrough, thanking her for "your time working us this far" and stating that Claremont had "the resources and experience working on projects just like yours." *Id.* at ¶ 18.

hired Claremont to perform the hurricane repairs if this information had been disclosed. *Id.* at ¶ 20.

Navarre also alleges that, during the August 28 discussions, the Megaritys represented that Claremont was capable of performing the repairs in a good and workmanlike manner by stating "that Claremont regularly performed similar disaster work all over the country" and that "the size of Claremont's crew would render each Plaintiff operational on an expedited basis." *Id.* at ¶ 21. Further, when Mr. Navarre and Ms. Saxby mentioned that they were entertaining an offer from another company, "the Megaritys stated verbally that the other company had previously been fired from a different job and that Claremont was hired to repair their allegedly poor work." *Id.* In reliance on these representations, Navarre and Claremont entered into work authorization agreements on August 29 and September 4, 2020, under which Claremont agreed *inter alia* to provide the necessary equipment for the repairs and to provide Navarre with invoices every two weeks. *Id.* at ¶ 22. Navarre alleges that Claremont ultimately did not provide much of the required equipment, "including (a) equipment needed to repair the Car Wash; (b) lift lock repairs; (c) drawers; (d) computers; (e) furniture; (f) equipment needed to repair Navarre Lube & Tire; (g) a paint booth; or (h) equipment needed to repair Navarre Chevrolet." *Id.* at ¶ 26. Finally, Navarre maintains that Claremont submitted fraudulent invoices, including bills for equipment (namely, $14,947.32 worth of computers) that it promised to provide but did not. *Id.* at ¶ 27, 30–33.

Claremont first asserts that Navarre falls short of Rule 9(b)'s heightened standard because it fails to provide sufficient detail as to the communications on which it allegedly

relied. "To plead fraud with particularity, a plaintiff must include the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'" *United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)) (alteration in *Russell*). Navarre has alleged that these communications involved Claremont's possession of the necessary licenses and came on a certain date, from one of the Megaritys, during face-to-face discussions Mr. Navarre and Ms. Saxby as they walked properties and surveyed the hurricane damage. It has also alleged that these statements induced Navarre to contract with Claremont. Navarre's inability to name which Megarity made these statements seems of little import at the pleading stage, when it appears both were on site and were authorized to speak for Claremont in these dealings.

  Claremont also argues that Navarre's claim fails to the extent it relies on unfulfilled future events. "The jurisprudence is clear that fraud cannot be imputed from alleged misrepresentation(s) alone but, rather, must be based solely on a person's intent *not* to perform." *Automatic Coin Enterprises, Inc. v. Vend-Tronics, Inc.*, 433 So.2d 766, 767–68 (La. Ct. App. 5th Cir. 1983) (emphasis in original). Accordingly, "[t]he general rule is that an action for fraud cannot be asserted based upon statements promissory in nature and relating to future actions" or "predicated upon the mere failure to perform a promise[.]" *Id.* at 768. However, a promise may give rise to fraud upon a showing that the defendant had no intention to perform as promised at the time the promise was made. *Taylor v. Dowling Gosslee & Assocs., Inc.*, 22 So.3d 246, 255 (La. Ct. App. 2d Cir. 2009) (citing *Sun*

*Drilling Prods. Corp. v. Rayborn*, 798 So.2d 1141 (La. Ct. App. 4th Cir. 2001)). Navarre alleges that Claremont promised that it was capable of handling such a project in a good and workmanlike manner, and that it would provide certain equipment and invoice Navarre every two weeks for the work completed. As to the latter two representations, nothing in the Second Amended Complaint shows that Claremont made these promises with the intention of breaking them. The first, however, is a representation of Claremont's qualifications—particularly involving the types of projects it has handled in the past and whether it was hired to repair the poor work of the company that made a competing offer. Claremont allegedly made these statements in order to gain Navarre's business, and succeeded. To the extent Navarre can show that these statements were false, they may suffice for a fraud claim. Additionally, the fact that Claremont invoiced Navarre for equipment it promised to provide but allegedly did not may provide an additional basis for rescinding the contract if Navarre can demonstrate fraudulent intent. Accordingly, the fraud claim is adequately supported at the pleading stage.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 41] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 14th day of May, 2025.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**