UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

BILLY NAVARRE CERTIFIED USED CAR : CASE NO. 2:24-CV-00085
IMPORTS L L C ET AL

VERSUS : JUDGE JAMES D. CAIN, JR.

CLAREMONT PROPERTY CO : MAGISTRATE JUDGE LEBLANC

## MEMORANDUM RULING

Before the court is a Motion to Dismiss [doc. 47] filed under Federal Rule of Civil Procedure 12(b)(6) by plaintiffs Billy Navarre Certified Used Car Imports, LLC; Billy Navarre Imports, Inc.; Lake Charles Auto Plaza, Inc. d/b/a Louisiana Direct Auto; Navarre Chevrolet, Inc.; Navarre Management, LLC; and Navarre Nissan LLC (collectively, "Navarre") in relation to the counterclaims [doc. 46] filed by defendant Claremont Property Company ("Claremont"). Claremont opposes the motion. Doc. 49. Also before the court is a Motion to Strike [doc. 51] filed by Claremont against the Reply Memorandum [doc. 50] and attached exhibits filed by Navarre in support of its motion. Navarre opposes this motion. Doc. 53.

I.
BACKGROUND

This suit arises from construction work agreements formed in the days following Hurricane Laura, which struck Southwest Louisiana on August 27, 2020. Navarre owns and operates several dealerships in Lake Charles and Sulphur, Louisiana. It sustained

damage to these properties during Hurricane Laura, requiring mitigation and repairs to roofing, ceilings, insulation, lighting, electrical, plumbing, and structural components.

Navarre sued Claremont in this court on January 19, 2024, alleging that the latter had breached the subject work agreements by failing to (1) provide all necessary equipment for the repairs, (2) provide invoices every two weeks, and (3) complete portions of the repairs in a good and workmanlike manner, which caused additional damage to the properties. Doc. 1, ¶ 16. As a result, Navarre allegedly suffered damages resulting from delays and the poor quality of the work performed by Claremont. *Id.* at ¶ 17. In its Second Amended Complaint, Navarre raised claims of (1) failure to perform and bad faith breach of contract, (2) rescission due to fraud or error, and (3) absolute nullity. Doc. 31. It seeks damages and declaratory relief. *Id.* In response, Claremont filed counterclaims of (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) open account, (4) unjust enrichment/quantum meruit, and (5) defamation. Doc. 46. Navarre now seeks dismissal of Claremont's counterclaims under Federal Rule of Civil Procedure 12(b)(6). Doc. 47. Claremont opposes the motion. Doc. 49. It also moves to strike Navarre's reply and exhibits attached to both the reply and the motion to dismiss, asserting that the exhibits are outside of the scope of the court's review under Rule 12(b)(6) and that new evidence may not be attached to a reply memorandum. Navarre opposes the motion to strike in part. Doc. 53.

## II.
## LAW & APPLICATION

### A. Legal Standards

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### B. Application

#### 1. Motion to Strike

In its motion to dismiss, Navarre maintains that its agreement with Claremont was null and void because Claremont falsely represented that it possessed a Louisiana

contractor's license at the time. Accordingly, it moves to dismiss Claremont's contract counterclaims. Doc. 47, att. 1. In support, it attached to the original motion (1) screenshots of Claremont's website, in which it represents *inter alia* that it complies with all state and local regulations, and (2) a print-out from the Louisiana State Licensing Board for Contractors ("LSLBC") website, showing the issuance and effective dates for Claremont's license. Doc. 47, atts. 2 & 3. To its reply memorandum, it also attached an authenticated licensing record for Claremont from the LSLBC. Doc. 50, att. 1. Claremont moves to strike all of the exhibits as well as the reply memorandum, arguing that they are not within the scope of the court's review on a Rule 12(b)(6) motion and that Navarre improperly included new evidence in support of its reply. Navarre does not oppose the motion as to the screenshots of Claremont's website, allowing that the exhibit is unnecessary for disposition of its motion to dismiss, but objects in all other respects. Doc. 53.

As noted above, a court's review on a 12(b)(6) motion is generally limited to the complaint and its attachments. Navarre maintains that the facts contained in the LSLBC print-out are "referenced in and central to Claremont's counterclaims." Doc. 47, att. 1, p. 8 n. 11. It notes that "[t]he majority of Claremont's counterclaims require . . . the Agreements to be enforceable," to the extent Claremont is seeking damages for breach of contract, and that Claremont has "condition[ed] a host of affirmative defenses on contractual nullity," thus conceding the centrality of the issue. *Id.*

In its Second Amended Complaint, Navarre raised claims of (1) failure to perform and bad faith breach of contract, (2) rescission due to fraud or error, and (3) absolute nullity. In support of the second and third claims, Navarre alleged that the contract should be

rescinded or declared an absolute nullity because Claremont lacked the appropriate Louisiana contractor's license. Among its affirmative defenses, Claremont states:

### TWENTY-SIXTH DEFENSE

> In the alternative, Plaintiffs had actual or implied knowledge and/or knew or should have known of a defect (which is denied) concerning Claremont's construction license yet nevertheless retained Claremont as its contractor and continued to make payments to Claremont for construction work performed at their properties. Plaintiffs cannot now unjustly benefit from the umbrella of the protection provided by a claim of absolute nullity in an effort to withhold and convert payment rightfully owed to Claremont for services rendered, materials provided, and repairs performed. Claremont pleads that Plaintiffs are estopped and/or have waived the right to assert the affirmative defense of absolute nullity.

Doc. 46, pp. 5–6. But it is Claremont's counterclaims which act as the complaint for the purposes of this motion. A court errs when it considers evidence under Rule 12(b)(6) merely because it is central to the defendant's defenses rather than the complaint itself. *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003). Instead, a document is only central to the complaint "when it is necessary to establish an element of one of the plaintiff's claims." *Truong v. Magnolia Fleet, LLC*, 724 F.Supp.3d 568, 574 (E.D La. 2024) (internal quotations omitted).

Claremont raises counterclaims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) open account, (4) unjust enrichment/quantum meruit, and (5) defamation. Some of these claims assume the validity of the contract, and thus implicitly contradict Navarre's contention that the contract was invalidated by Claremont's license status. None of Claremont's allegations, however, directly place its license status at issue. Instead, its counterclaims appear to be built around the idea that the contract was

valid and/or it is owed compensation for its work regardless of whether it possessed a Louisiana contractor's license when the agreement was signed. The fact that Navarre has made the license central to its original claims and likely defenses to Claremont's counterclaims does not allow it to shift the court's focus to its own pleadings when the deference is owed to Claremont at this stage.

 Navarre also argues that both the LSLBC website print-out and the authenticated record are subject to judicial notice. Under Federal Rule of Evidence 201, the court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). This applies to adjudicative facts, and the court may take such notice at any stage of the proceeding provided the opposing party is given adequate opportunity to respond. *Id.* at 201(d), (e). On a 12(b)(6) motion, the court's scope of review thus extends to matters "including public records and government websites" of which it might take judicial notice. *Durr v. GOL, LLC*, 393 F.Supp.3d 476, 483 (E.D. La. 2019). Accordingly, a court may also "take judicial notice of a license that is available on a governmental website without converting a motion to dismiss into a motion for summary judgment." *Cicalese v. Univ. of Tex. Medical Branch*, 456 F.Supp.3d 859, 871–872 (S.D. Tex. 2020) (citing *Bombet v. Donovan*, 2015 WL 65255, at *6 (M.D. La. Jan. 5, 2015)).

 Although the LSLBC print-out was not in an authenticated form, the court can find the same information by searching the contractor name ("Claremont Property Co.") on lslbc.louisiana.gov. *See id.* at 871 n. 7 (verifying license through search of Texas Medical Board website). As Navarre's print-out, attached to its original motion, suggests, Claremont

first obtained its Louisiana commercial contractor license on July 20, 2022. This fact is therefore subject to judicial notice, and the court need not disregard it because the authenticated record was not submitted until Navarre filed its reply brief. Additionally, Claremont has had adequate time to respond because the license status and request for the court to take judicial notice of same were first placed at issue in Navarre's motion to dismiss. The motion to strike will be denied and the licensure will be considered to the extent it is relevant.

## 2. Motion to Dismiss

Navarre maintains that (i) the agreement is a nullity because Claremont lacked a commercial contractor's license, requiring dismissal of Claremont's contract claims and, in the alternative, (ii) Claremont's open account claim must be dismissed due to Claremont's failure to allege an open account, (iii) Claremont's unjust enrichment/quantum meruit claim must be dismissed because quantum meruit is not a substantive basis of recovery and Claremont has failed to plead the essential elements of an unjust enrichment claim, and (iv) the defamation claim must be dismissed as both premature and lacking merit. Claremont opposes the motion in all respects.

### i. Nullification

As to nullification, Claremont alleges that Navarre "entered into multiple work authorization contracts with Claremont to perform emergency mitigation, cleaning, extraction, repairs, renovations, and other construction services" to its Hurricane Laura-damaged structures between August 29 and September 4, 2020. Doc. 46, pp. 30–31, ¶ 7. The court has taken judicial notice of the fact that Claremont only obtained a Louisiana

commercial contractor's license in July 2022. The Louisiana State Contractors Licensing Law (the "Act"), however, makes it "unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor . . . unless he holds an active license as a contractor under the provisions of this Chapter." La. R.S. § 37:2163(A)(1). "Contractor" is defined under the Act as:

> any person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, furnishing labor, or furnishing labor together with material or equipment, or installing material or equipment for any of the following:
> (i) Any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost is fifty thousand dollars or more when the property is to be used for commercial purposes.

*Id.* at 37:2150.1(d). The term "includes persons who receive an additional fee for the employment or direction of labor, or any other work beyond the normal architectural or engineering services." *Id.* at 37:2150.1(b). "These statutes embody rules of public order, and, under La. C.C. art. 2030, any contract made in violation of a rule of public order is an absolute nullity." *Robinson v. Papania*, 368 So.3d 74, 78 (La. Ct. App. 1st Cir. 2023); *accord CCAPS, LLC v. HD and Assoc., LLC*, 2023 WL 1965087, at *5 (E.D. La. Feb. 13, 2023) (collecting cases). An absolutely null contract is deemed never to have existed and is thus unenforceable through an action for breach of contract. *Robinson*, 368 So.3d at 78.

The agreements, which are attached and incorporated by reference to Claremont's counterclaims, show that the scope of work included, *inter alia*, repairing and replacing exterior building materials, roofing, compromised insulation and ceiling materials, and

glass and storefront framing, as well as structural framing, sheetrock, and paint for Navarre's commercial properties. Doc. 46, att. 1. Claremont alleges that the value of these services exceeded $14 million, and that Navarre has paid over $6.7 million for services rendered. Doc. 46, pp. 31–32, ¶¶ 10–11.

Claremont now argues that the work qualifies as "dewatering." An exemption passed in August 2022 exempted "work covering dewatering or water mitigation" from the Act's licensure requirements. La. R.S. 37:2157(A)(12). Even if that exemption were in effect in August and September 2020, however, the agreements include not only "[w]ater extraction/mitigation" but also "[l]ighting, plumbing and electrical repairs," "[s]tructural framing, sheet rock and paint," and "HVAC repair/replace."[1] Doc. 46, att. 1. There can be no dispute that a sizable portion of the contract was for the repair/reconstruction of Navarre's commercial properties and that the value of the work exceeded $50,000.00. The work thus falls within the scope of La. R.S. 37:2150.1(d)(i).

Claremont next argues that, even if its work fell within the Act's scope and no exemptions applied, it "complied with the statute by having a supervising general contractor for the subject projects who had a valid LA contractors' license." Doc. 49, p. 21. But it cites no statute or case law in support of this position. The fact remains that Claremont contracted directly with Navarre for work within the scope of the Act, without the appropriate license. Louisiana courts have repeatedly nullified contracts on this basis. *E.g.*, *Quaternary Resource Investigations, LLC v. Phillips*, 316 So.3d 448 (La. Ct. App. 1st

---

[1] Claremont also alleges that the scope included not only "emergency mitigation, cleaning, [and] extraction" but also "repairs, renovations, and other construction services to the various damaged structures[.]" Doc. 46, pp. 30–31, ¶ 7.

Cir. 2020); *Korrapati v. Augustino Bros. Constr., LLC*, 302 So.3d 147, 153 (La. Ct. App. 5th Cir. 2020).

Claremont also argues that the Act targets unqualified individuals masquerading as contractors and that Navarre should not be allowed to abuse the statute to evade its debts to Claremont, "an established commercial contractor known for providing large-scale disaster mitigation and repair services across the entire Gulf Coast region." Doc. 49, p. 22. The state legislature, however, has not yet seen fit to create exemptions based on the size, longevity, or reputation of a contractor. Finally, Claremont maintains that Navarre is estopped from raising issues with its licensure or the quality of its work because it paid for some of Claremont's services without objection. Again, the court can find no support in the case law for the idea that a client waives issues with a contractor's license if he pays for some of the work invoiced. Accordingly, the work authorizations forming the subject agreement between Navarre and Claremont are a nullity and the breach of contract claim must be dismissed. *24/7 Restoration Specialists, LLC v. Young*, 2023 WL 3816973, at *4 (E.D. La. June 5, 2023). A claim for breach of the covenant of good faith and fair dealing under Louisiana law also requires an underlying valid contractual relationship between the parties. *CCAPS, LLC*, 2023 WL 1965087 at *10 (citing *Grisaffi v. Dillard Dep't Stores, Inc.*, 43 F.3d 982, 983 (5th Cir. 1995)). Because the agreement in this matter is a nullity, this claim will also be dismissed. Claremont will be given leave to amend, however, if it can show that any change orders or revisions issued after it obtained its license in July 2022 might have created a valid contract between the parties.

### ii. Open account claim

Navarre maintains that Claremont's open account claim must fail due to the nullity of the underlying agreement and due to Claremont's failure to adequately allege that an open account existed. An open account "includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions." La. R.S. 9:2781(D). Because the statute provides for attorney fees and is penal in nature, it must be strictly construed. *Lehman v. Benasco*, 384 So.3d 366, 370 (La. Ct. App. 1st Cir. 2024) (citing *La. Machinery Co., LLC v. Bihm Equipment Co.*, 329 So.3d 317, 327 (La. Ct. App. 1st Cir. 2021)).

"To prevail on a suit on open account, the creditor must prove that the debtor contracted for the services on an open account." *Dixie Mach. Welding & Metal Works, Inc. v. Gulf States Marine Technical Bureau, Inc.*, 692 So.2d 1167, 1169 (La. Ct. App. 5th Cir. 1997). "An open account necessarily involves an underlying agreement between the parties on which the debt is based." *Signlite, Inc. v. Northshore Serv. Ctr., Inc.*, 959 So.2d 904, 907 (La. Ct. App. 1st Cir. 2007). "To distinguish between an open account and an ordinary contract, courts consider factors such as '(1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings.'" *24/7 Restoration Specialists, LLC v. Young*, 634 F.Supp.3d 287, 290 (E.D. La. 2022) (quoting *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 174 (5th Cir. 2007)). "However, the open account statute does not require multiple transactions or

for parties to anticipate future transactions." *Shamrock Mgmt., LLC v. GOM Fabricators, LLC*, 2019 WL 3025237, at *4 (La. Ct. App. 1st Cir. 2019) (citing *Factor King, LLC v. Block Builders, LLC,* 193 F.Supp.3d 651, 658–59 (M.D. La. 2016)).

Claremont maintains that it "has sufficiently alleged that the continuous and evolving contracts to repair the Navarre properties constitute an open account under La. R.S. § 9:2781." Doc. 49, p. 24. The only agreements specifically described in the counterclaims are those attached thereto, executed between August 29 and September 4, 2020, which set the scope of work and schedules for reimbursement. Claremont also alleges that it provided Navarre "with Proposed Revised Scopes of Work and Change Orders describing the newly-identified and additional repairs necessitated" by the hurricane damage. Doc. 46, p. 31, ¶ 9. Claremont does not state whether any of these were issued after Claremont obtained its Louisiana contractor's license in July 2022.

Like an open account, the authorizations "leave[] undetermined key aspects of the obligation, such as the time period during which the services will be rendered or the total cost of the services for which a party may be liable." *Murphy Expl. & Prod. Co. – USA v. W&T Offshore, Inc.*, 2025 WL 2378630, at *3 (E.D. La. Aug. 15, 2025) (quoting *Congress Square Ltd. P'ship v. Polk*, 2011 WL 837144, at *5 (E.D. La. Mar. 4, 2011)). They are also vague as to scope, leaving much to be determined under the alleged future change orders and revisions. Claremont alleges that it provided Navarre with its invoices for these outstanding professional services on December 15, 2022, and that an outstanding balance of nearly $7.8 million remains. Doc. 46, pp. 32, 35, ¶¶ 11, 37.

The factors cited in *Cambridge Toxicology* "are not dispositive and do not supplant the plain statutory text." *Murphy Expl. & Prod. Co. – USA*, 2025 WL 2378630 at *3 (citing *Wood Materials LLC v. Berkley Ins. Co.*, 2018 WL 560473, at *3 (E.D. La. Jan. 24, 2018)). Louisiana courts have repeatedly recognized that construction contracts may become open accounts when they fail to adequately define terms such as the timeframe or the total price and the contractor supplies the materials and labor on the expectation that he will be paid at the completion of the project. *E.g.*, *SBL Constr., LLC v. Eymard*, 289 So.3d 1079, 1082 (La. Ct. App. 1st Cir. 2019); *Cong. Square*, 2011 WL 837144 at *5. Claremont may not recover on open account based on any agreement made before it obtained a contractor's license, because these agreements are still a nullity under Louisiana law. *See 24/7 Restoration Specialists*, 2023 WL 3816973 at *5 ("As the Court has determined that the Authorization is an absolute nullity, the open account claims fails because judgment shall not be rendered in Plaintiff's favor on the now-dismissed breach of contract claim."). But Claremont may be able to plead a claim on open account based on any revisions issued after it obtained the appropriate license. Accordingly, the motion to dismiss will be granted as to this claim, with leave to amend as described above.

### iii. Quantum meruit/unjust enrichment

As Navarre notes, quantum meruit is not a recognized cause of action under Louisiana law and this claim must instead be analyzed under the theory of unjust enrichment. *United Disaster Response, LLC v. Omni Pinnacle, LLC*, 569 F.Supp.2d 658, 665–66 (E.D. La. 2008). To maintain a claim for unjust enrichment, a plaintiff must show (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and

impoverishment, (4) an absence of justification for the enrichment and impoverishment, and (5) the unavailability of any other remedy at law to the plaintiff. *Max Foote Constr. Co., LLC v. MWH Constructors, Inc.*, 2018 WL 5297744, at *7 (E.D. La. Oct. 25, 2018) (citing *Baker v. Maclay Props. Co.*, 648 So.2d 888, 897 (La. 1995)). Until the validity of plaintiff's other claims can be determined, an unjust enrichment claim "should not be dismissed on the ground that the plaintiff has another available remedy." *24/7 Restoration Specialists, LLC*, 634 F.Supp.3d at 292 (cleaned up). This is because "a plaintiff cannot plead a remedy into existence" and "[t]he law does not provide another remedy merely because a plaintiff claims that it does." *Id.* (quoting *Perez v. Utility Constructors*, 2016 WL 5930877, at *2 (E.D. La. Oct. 12, 2016)). Unlicensed contractors may use the theory of unjust enrichment to recover "the actual costs of their materials, services, and labor in the absence of a contract or in the case of a null contract, with no allowance for profit or overhead." *Quaternary Resource Investigations, LLC*, 316 So.3d at 463 (citing *Boxwell v. Dep't of Highways*, 14 So.2d 627, 632 (La. 1943)).

Claremont maintains its unjust enrichment claim in the alternative to one on open account. But Navarre contests the validity of that claim, and may prevail on summary judgment. Accordingly, the court will not dismiss the unjust enrichment claim at this stage on the grounds that Claremont has another remedy available. Navarre maintains, however, that the claim fails at the fourth element—absence of justification for the impoverishment. Under this element Louisiana courts have recognized a "substandard work exception" and barred recovery by an unlicensed contractor if he "fraudulently obtained the contract, if he had been inexperienced at the work he performed, or, if his work had been substandard."

*Allan Contracting Enterprises v. Cummins Inc. (of Indiana)*, 2024 WL 4665256, at *9 (E.D. La. Nov. 4, 2024) (quoting *Dennis Talbot Const. Co., Inc. v. Privat Gen. Contractors, Inc.*, 60 So.3d 102, 104–05 (La. Ct. App. 3d Cir. 2011)). At the 12(b)(6) stage, however, the court is limited to the allegations in the counterclaim and cannot take Navarre's word for it that the work was substandard or that the agreement was fraudulently obtained. Instead, this issue should be decided based on competent evidence. *See id.* (denying summary judgment on unjust enrichment claim because plaintiff introduced sufficient evidence to show "a genuine dispute between the parties regarding whether [plaintiff]'s work was substandard."). The motion to dismiss will be denied as to this claim.[2]

    iv.    **Defamation**

Lastly, Navarre moves for dismissal of Claremont's defamation claim as both premature and lacking in merit. "Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name." *Costello v. Hardy*, 864 So.2d 129, 139 (La. 2004). The elements of a defamation claim are: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." *Id.* (internal quotations omitted). Thus, in order to prevail, a plaintiff must show "that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused the plaintiff damages." *Sassone v. Elder*, 626 So.2d 345, 350 (La. 1993).

---

[2] Navarre maintains that Claremont's counterclaim for quantum meruit must be dismissed, noting that Claremont raised no opposition. But Claremont brought a single claim for unjust enrichment/quantum meruit. The court has analyzed the claim as one of unjust enrichment and finds no need to strike the reference to quantum meruit.

Claremont's defamation counterclaim arises from statements made by Navarre "through the publication of their Complaint . . . and reaffirmed . . . in their First Amended Complaint[.]" Doc. 46, p. 37, ¶ 47. The statements in question are allegations regarding Claremont's fraudulent inducement of the contract and ability to perform the work. *Id.* at pp. 37–38, ¶¶ 48–52. Louisiana courts have "consistently and unequivocal[l]y held that an action for libel or slander arising out of allegations or statements made in a judicial proceeding cannot be brought by a party to the judicial proceeding until the proceeding is terminated." *Doe v. Roman Cath. Church of Archdiocese of New Orleans*, 588 F.Supp.3d 698, 720 (E.D. La. 2022) (citing *Calvert v. Simon*, 311 So.2d 13, 15 (La. Ct. App. 2d Cir. 1975)). Claremont argues that an exception should apply because of Navarre's contradictory statements to its insurer regarding the quality of Claremont's work and the reasonableness of its billing in a separate judicial proceeding. *See Billy Navarre Chevrolet, Inc. v. Gotham Ins. Co.*, No. 2:22-cv-2749 (W.D. La. Aug. 16, 2022). And indeed, the qualified privilege granted to attorneys for such statements only applies when the statements are both material and made without actual malice. *Alexander v. Blue Williams, LLP*, 363 So.3d 272, 280 (La. Ct. App. 4th Cir. 2019) (citing *Milling, Benson, Woodward, Hillyer, Pierson & Miller LLP v. Am. Marine Holding Co.*, 729 So.2d 139, 141–42 (La. Ct. App 4th Cir. 1999)). But the court cannot find any caselaw creating an exemption on this basis to the prematurity rule. To hold otherwise would require the court to simultaneously determine both the truth of the allegations and their libelous effect. Accordingly, the defamation claim must be dismissed until these proceedings "have reached a final and

definitive disposition." *Hillman v. U.S. Aviation Underwriters*, 509 So.2d 125, 127 (La. Ct. App. 1st Cir. 1987).

## III.
### CONCLUSION

For the reasons stated above, the Motion to Strike [doc. 51] will be **DENIED**, the Motion to Dismiss [doc. 47] will be **GRANTED IN PART** and **DENIED IN PART.** Claremont will be given 30 days to amend its counterclaims as described above. If it fails to do so, its counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and open account will be **DISMISSED WITH PREJUDICE.** The counterclaim for defamation will be **DISMISSED WITHOUT PREJUDICE** as premature.

**THUS DONE AND SIGNED** in Chambers on the 25th day of August, 2025.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE