UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

BILLY NAVARRE CERTIFIED USED CAR : CASE NO. 2:24-CV-00085
IMPORTS L L C ET AL

VERSUS : JUDGE JAMES D. CAIN, JR.

CLAREMONT PROPERTY CO : MAGISTRATE JUDGE LEBLANC

MEMORANDUM ORDER

Before the court is a Motion to Reconsider [doc. 57] filed by defendant/counterclaimant Claremont Property Company ("Claremont"). Plaintiffs/counter-defendants Billy Navarre Certified Used Car Imports, LLC; Billy Navarre Imports, Inc.; Lake Charles Auto Plaza, Inc. d/b/a Louisiana Direct Auto; Navarre Chevrolet, Inc.; Navarre Management, LLC; and Navarre Nissan LLC (collectively, "Navarre") oppose the Motion to Reconsider. Doc. 65. The motion relates to the court's recent ruling on Navarre's Motion to Dismiss [doc. 47] and Claremont's Motion to Strike [doc. 51]. *See* doc. 55.

I.
BACKGROUND

The factual and legal backgrounds for the two motions under reconsideration are provided in the court's prior rulings and incorporated here by reference. In sum, the court dismissed some of Claremont's counterclaims based on the fact that it lacked a Louisiana commercial contractor's license at the time it entered into work authorization contracts for repairs and renovations relating to Navarre's Hurricane Laura damage. Such contracts were

thus an absolute nullity under Louisiana law, limiting Claremont's recovery to actual costs with no allowance for profit or overhead. Doc. 55.

In its Motion to Reconsider, Claremont raises a new "interest of justice" argument under Louisiana Civil Code article 2033 and objects to the fact that the court took judicial notice of information on a government licensing website. Doc. 57. Navarre opposes the motion on both fronts, asserting that Claremont is improperly raising arguments that should have been raised on first consideration and that such arguments fail at any rate on the merits. Doc. 61.

## II.
## LAW & APPLICATION

### A. Legal Standard

Federal Rule of Civil Procedure 54(b) governs reconsideration of interlocutory orders, like the rulings at issue, and leaves "the trial court [] free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin v. Kroger Tex., LP*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)). The approach under this rule to consideration of new arguments is more flexible than the one applied to reconsideration of final judgments, "reflecting the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 336–37 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25–26 (D.C. Cir. 2015)) (internal quotations omitted).

B. Application

**1. Judicial notice**

In the Motion to Dismiss, Navarre requested judicial notice of information from the Louisiana State Licensing Board for Contractors ("LSLBC") pertaining to the issuance and effective dates of Claremont's license. Claremont offered no reason to dispute the accuracy of the information in the LSLBC's records but instead argued that judicial notice of such an adjudicative fact was improper. The court stated in its original ruling:

> Under Federal Rule of Evidence 201, the court may take judicial notice of "a fact that is not subject to **reasonable** dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). This applies to adjudicative facts, and the court may take such notice at any stage of the proceeding provided the opposing party is given adequate opportunity to respond. *Id.* at 201(d), (e). On a 12(b)(6) motion, the court's scope of review thus extends to matters "including public records and government websites" of which it might take judicial notice. *Durr v. GOL, LLC*, 393 F.Supp.3d 476, 483 (E.D. La. 2019). Accordingly, a court may also "take judicial notice of a license that is available on a governmental website without converting a motion to dismiss into a motion for summary judgment." *Cicalese v. Univ. of Tex. Medical Branch*, 456 F.Supp.3d 859, 871–872 (S.D. Tex. 2020) (citing *Bombet v. Donovan*, 2015 WL 65255, at *6 (M.D. La. Jan. 5, 2015)).

Doc. 55, p. 6 (emphasis added). After independently verifying the information from the LSLBC site, which Navarre had provided in print-outs attached to its motion, the court agreed that judicial notice was proper. *Id.* at 6–7. It thus rendered judgment based on a determination that Claremont first obtained its Louisiana commercial contractor license on July 20, 2022, well after it contracted with Navarre for the subject work in August and September 2020.

Claremont insists that this judicial notice is improper, because "the doctrine of judicial notice cannot be utilized to prove the truth of the matter contained in **any** documents or public records, and the LSLBC's online website cannot be judicially noticed to prove the matters it allegedly contains regarding Claremont's Louisiana licensing status." Doc. 69, p. 10 (emphasis added). To this end it relies on two Fifth Circuit cases, *PNC Bank, N.A. v. 2013 Travis Oak Creek, L.P.*, 136 F.4th 568 (5th Cir. 2025) and *Giles v. City of Dallas*, 539 F. App'x 537 (5th Cir. 2013). Both cases, however, concern judicial notice of factual findings in other adversarial proceedings. In *PNC Bank* the court noted that it had "previously taken judicial notice of jurisdictional facts drawn from public records," but that factual findings from other court proceedings—even related cases—were of a different species. 136 F.4th at 574–75. Similarly, *Giles* involved records from the Texas Commission for Lawyer Discipline. The court extended judicial notice to the fact that plaintiff's counsel was permitted to resign in lieu of discipline and that certain allegations were pending against him, but not to the truth of the matters asserted in the disciplinary records. 539 F. App'x at 542 n. 1. These rulings reflect the court's longstanding consideration that adjudicative facts from adversarial proceedings are inherently subject to challenge. Because "it would be difficult to 'conceiv[e] of an adjudicative fact found in a court record that is not [the] subject of reasonable dispute," such a fact must "'obtain its 'indisputable' status from some source other than a court's imprimatur . . . .'" *PNC Bank*, 136 F.4th at 574–75 (quoting *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 n. 18 (5th Cir. 1998)) (alterations in *PNC Bank*).

The other two appellate cases relied on by Claremont, *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344 (7th Cir. 1995) and *Doss v. Clearwater Title Co.*, 551 F.3d 634 (7th Cir. 2008), fare no better in showing error to the undersigned's prior ruling. In *Hennessy*, a sex and pregnancy discrimination case, damages were subject to a cap based on the defendant's number of employees. 69 F.3d at 1354–55. The court affirmed the district court's refusal to take judicial notice of an SEC form for the purpose of determining this number, because of reasonable disputes over the form's contents and its significance.[1] In *Doss*, the court likewise held that judicial notice of a public record was improper based on "reasonable dispute"—this time from plaintiff's allegations[2] that the subject deed was a forgery. 551 F.3d at 639–40.

Here, on the other hand, Claremont has never made any allegation or presented evidence from which the court could determine that the information on the LSLBC site is subject to reasonable dispute. And in its amended counterclaims, it concedes "the fact that Claremont, the entity itself, was not licensed." Doc. 59, ¶ 84. Additionally, the LSLBC's determinations are not the result of adversarial proceedings inviting inherent dispute. Instead, they are records of a state board kept in the ordinary course of business and

---

[1] The parties had introduced conflicting testimony regarding the company's size, with plaintiff speculating that the company had over 200 employees while a defense witness, who acted as director of employee services, stated that the number was 186. *Id.* at 1354. The 10-K form indicated that the company had 398 employees, but it covered two other units not involved in the suit in addition to the one that employed the plaintiff. *Id.* at 1354–55.

[2] Plaintiff made more than a cursory assertion. In his response to the subject motion to dismiss, he:
> asserted that he had not sold or otherwise transferred his property, and that the deed attached to the defendants' motion was a forgery. Indeed, Doss continued, he had filed a quiet title claim in the Circuit Court of Cook County and had caused a *lis pendens* notice to be recorded with the Cook County Recorder of Deeds. Doss attached a copy of both his state court complaint and his *lis pendens* notice to his response.

*Doss*, 551 F.3d at 637.

maintained for the public to verify the license status of contractors. The Fifth Circuit has repeatedly affirmed that the court may take judicial notice of adjudicative facts contained in government websites and/or records. *See, e.g.*, *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (judicial notice of Texas agency's website). Thus, there is no basis for reconsideration of this issue.

    2. **Interests of justice**

In its Motion to Reconsider Claremont admits that it has performed "additional research" and raises, for the first time, the "interests of justice" exception to damages available for an absolutely null contract under Louisiana Civil Code article 2033. Doc. 57, att. 1. Navarre asserts that, under binding precedent, reconsideration cannot be used to advance new theories or arguments that could have been raised in the first instance. As noted above, Rule 54(b) provides a more flexible approach to consideration of new arguments. But "[j]udicial economy counsels against reconsidering an issue each time someone presents a new argument." *CIT Bank, N.A. v. Howard Transp., Inc.*, 2019 WL 3322725, at *1 (E.D. La. Jul. 24, 2019) (quoting *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 259 F.Supp.2d 471, 480 (M.D. La. 2002)). "The discretion to modify an interlocutory order does not eliminate the policy reasons behind discouraging motions for reconsideration which rehash the same arguments or, without justification, raise new arguments for the first time." *Grand Famous Shipping Ltd. v. Port of Houston Auth.*, 572 F.Supp.3d 307, 316 (S.D. Tex. 2021) (internal quotations omitted).

Rather than express any regret for its failure to adequately raise and brief this issue in the first instance, Claremont contends that the court "erred factually and legally when it declared Claremont's contract null but failed to proceed through the 'interest of justice' analysis." Doc. 69, p. 4. But in the only contractor cases on which Claremont relies, it is clear that the party seeking damages raised the exception it believed applicable rather than hoping that the issue would be considered *sua sponte* by the court.[3] *See Command Construction, LLC v. Parish of Jefferson*, 392 So.3d 638, 646 (La. Ct. App. 5th Cir. 2024); *Maroulis v. Entergy Louisiana, LLC*, 20-226 314 So. 3d 1002, 1008 (La. Ct. App. 5th Cir. 2021), *writ granted, judgment rev'd*, 317 So. 3d 316 (La. 2021). To the extent Claremont believed that the issue should only be raised after a determination of nullity, it is still puzzling that Claremont would have made no mention of it throughout the briefing of a 12(b)(6) motion seeking dismissal of its counterclaims. The court is not Claremont's advocate and has no duty to raise arguments that it failed to uncover.

Claremont has not justified the delay in raising this issue, beyond its attempt to shift the blame. Nevertheless, the court is mindful of the fact that this matter is still stuck at the pleading stage. This brief detour will not derail trial preparations or ongoing discovery.[4]

---

[3] In *Kimball v. HEALTHCAREfirst, Inc.*, 2013 WL 4782139 (M.D. La. Sep. 5, 2013), the plaintiff sought damages under Article 2033 and moved for reconsideration of the court's finding that the article did not apply because the contract was not an absolute nullity. *Id.* at *1. Claremont relies on this case most heavily for the proposition that this court erred by refusing to consider "interest of justice," but that exception is not raised or considered in *Kimball*. Additionally, it is clear from the original opinion that plaintiff raised her entitlement to damages under Article 2033 in the first place. *See Kimball v. HEALTHCAREfirst, Inc.*, 2013 WL 12239550, at *2 (M.D. La. June 6, 2013), *on reconsideration*, 2013 WL 4782139 (M.D. La. Sept. 5, 2013) ("Kimball argues that Louisiana Civil Code articles 2030 and 2033 invalidate the agreement as a whole, and would allow her to acquire damages.").

[4] The court's decision to allow reconsideration at this juncture is no guarantee that reconsideration will be allowed in the future, even if this case remains stuck at the pleading stage for the next several months. The parties are cautioned to present their best arguments and research on the first attempt.

Additionally, the issue is a somewhat novel one that may prove relevant to future cases involving out-of-state contractors. Accordingly, the court will consider whether the interest of justice exception applies.[5]

Louisiana Civil Code article 2030 provides that "[a] contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral." La. Civ. Code art. 2030. As discussed in the court's prior opinion, this has been applied to contracts that violate prohibitory laws such as the contractor licensing statute at issue. Article 2033 discusses the effects of null contracts. It provides, in relevant part:

> Nevertheless, a performance rendered under a contract that is absolutely null because its object or its cause is illicit or immoral may not be recovered by a party who knew or should have known of the defect that makes the contract null. The performance may be recovered, however, when that party invokes the nullity to withdraw from the contract before its purpose is achieved **and also in exceptional situations when, in the discretion of the court, that recovery would further the interest of justice.**

La. Civ. Code art. 2033 (emphasis added). Unless this exception applies, the contractor or vendor on an absolutely null contract is limited to recovery of actual costs without allowance for profit or overhead. *E.g.*, *Coleman v. Bossier City*, 305 So.2d 444, 445–47 (La. 1974); *Jones v. City of Lake Charles*, 295 So.2d 914, 917–18 (La. Ct. App. 3d Cir. 1974).

---

[5] In its reply Claremont attempts to expand the scope of its motion to reconsider by pointing to new allegations in its proposed amended complaint, indicating that it acted as a single business entity with a Louisiana contractor it hired for the project. On the original motion to dismiss, the court rejected Claremont's allegation that it had complied with the licensing statute by hiring a Louisiana contractor. Doc. 55, pp. 9–10. Navarre maintains that Claremont's allegations should be stricken because they exceed the limited leave to amend granted by the court. To the extent Claremont believes its new allegations revive any of its counterclaims, the court will address these under Navarre's Motion to Dismiss and Motion to Strike. *See* doc. 63.

Claremont chiefly relies on *Command Construction*[6], supra, another matter in which a construction contract was subject to nullification due to its violation of a prohibitory law. The defendant (Jefferson Parish) had violated the Public Bid Law by failing to accept the lowest responsible bidder, as determined in a separate proceeding. *See Boh Bros. Construction Co., LLC v. Parish of Jefferson*, 325 So.3d 500 (La. Ct. App. 5th Cir. 2021). While that appeal was pending the Parish contracted with the second-lowest bidder, Command Construction, for the same work. *Command Constr., LLC*, 392 So.3d at 641–42. Even after the appellate court determined that the Public Bid Law had been violated, the parish never ordered Command Construction to stop working on the project. *Id.* at 643. After completion of the project, however, the Parish asserted for the first time that the contract was a nullity and that Command Construction was only entitled to recover costs. *Id.* On cross-motions for summary judgment, the district court ruled and the appellate court affirmed that Command Construction had shown an issue of fact as to whether Article 2033's "interest of justice" exception applied:

> We further conclude, as did the trial judge, that even if the contract is a nullity, genuine issues of material fact exist as to whether Command is limited to recovery of costs. As an exception to the general rule that only costs may be recovered for a contract which is a nullity due to violation of a prohibitory law, La. C.C. art. 2033 permits that profit and overhead may also be recovered in ***exceptional situations*** when, in the discretion of the court, that recovery would further the interest of justice. In the instant case, the Parish evidently allowed Command to continue work on the project after this

---

[6] The only other construction case cited by Claremont is *Maroulis v. Entergy La., LLC*, 317 So.3d 316 (La. 2021), a short per curiam in which the Louisiana Supreme Court held that a contractor was not entitled to invoke the contract's nullity to avoid liability to a third party. The court did not discuss exceptional circumstances and instead emphasized 1984 Revision Comment (c), which states in relevant part that "a party who knew or should have known **at the time of contracting** of a defect that made the contract absolutely null may not avail himself of the nullity when the purpose of the contract has been accomplished." *Id.* (emphasis added). Here there is no allegation that Navarre knew of Claremont's license status at the time of contracting.

> court's ruling in Boh Bros. and after the Supreme Court denied writs; requested additional work on the project; and put the project into use after completion, then contended that the contract is a nullity. These and other related allegations of fact may well constitute "exceptional situations." Further, the question of whether, in the discretion of the trial court, such exceptional circumstances as these are in the interest of justice, so as to justify recovery of more than only costs, is also material and remains, at the least, genuinely at issue.

*Id.* at 650 (emphasis in original; footnotes removed).

Here, however, there is no allegation that Navarre became aware of the defect during the life of the contract, persisted in its relationship with Claremont, and then invoked the nullity defense. Instead, Claremont points to the fact that Navarre accepted and paid for millions of dollars in work and used Claremont's invoices to resolve its insurance dispute.[7] But this is hardly an "exceptional circumstance," as required by Article 2033. Indeed, it would be true for most disaster repair cases involving unlicensed contractors—a subset of cases that the licensing law was likely designed to address, given the high demand and resulting opportunities for corner-cutting that the widespread devastation of hurricanes and floods can create. Had the legislature desired to create an exception to nullification when there is evidence that the customer accepted the work or received insurance coverage for it, it might have done so. As it stands, however, the court finds no basis to effectively exempt these cases from the effects of the contractor licensing requirements.

---

[7] Claremont complains that Navarre only took issue with its licensure status after Claremont learned of Navarre's settlement with its insurer and made demand for the outstanding balance in January 2024, well after the work was completed. Doc. 57, att. 1, p. 16.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Reconsider [doc. 57] is hereby **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 24th day of October, 2025.

JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE