UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

BILLY NAVARRE CERTIFIED USED CAR        CASE NO. 2:24-CV-00085
IMPORTS L L C ET AL

VERSUS                                  JUDGE JAMES D. CAIN, JR.

CLAREMONT PROPERTY CO                   MAGISTRATE JUDGE LEBLANC

### MEMORANDUM RULING

Before the court is a Motion to Amend [doc. 76] filed by defendant/counterclaimant Claremont Property Company ("Claremont"). Plaintiffs/counter-defendants Billy Navarre Certified Used Car Imports, LLC; Billy Navarre Imports, Inc.; Lake Charles Auto Plaza, Inc. d/b/a Louisiana Direct Auto; Navarre Chevrolet, Inc.; Navarre Management, LLC; and Navarre Nissan LLC (collectively, "Navarre") oppose the motion. Doc. 81. The motion relates to Claremont's Amended Counterclaim [doc. 59]. Also before the court is a partial Motion to Dismiss and Motion to Strike [doc. 63] filed by Navarre, relating to the same Amended Counterclaim [doc. 59]. Claremont opposes the motion. Doc. 72.

### I.
### BACKGROUND

The factual and legal backgrounds for these proceedings have been repeated at length in the court's rulings on prior dispositive motions. In sum, the court dismissed some of Claremont's counterclaims based on the fact that it lacked a Louisiana commercial contractor's license at the time it entered into work authorization contracts for repairs and renovations relating to Navarre's Hurricane Laura damage. Such contracts were thus an

absolute nullity under Louisiana law, limiting Claremont's recovery to actual costs with no allowance for profit or overhead. Doc. 55. The court granted Claremont leave to amend, however, if Claremont could show that any change orders or revisions were issued after it obtained its Louisiana contractor's license in July 2022. *Id.* at 10.

Claremont filed a Motion to Reconsider, which the court denied. Docs. 57, 71. It also timely amended its pleading, adding new allegations and counterclaims. Doc. 59. Navarre then filed a partial Motion to Dismiss and Motion to Strike relating to that pleading. Doc. 63. Claremont opposed those motions and filed a Motion to Amend/Correct [doc. 76] seeking the court's permission to exceed the scope of the leave granted in its prior ruling through (1) the allegations and claims in Claremont's Amended Counterclaim [doc. 59] and (2) an additional claim against Navarre under the Louisiana Unfair Trade Practices Act ("LUTPA"). Doc. 76. Navarre opposes the motion on the grounds of undue delay, futility, and prejudice.

## II.
## LAW & APPLICATION

### A. Legal Standard

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." When a motion for leave is filed, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Unless there is a 'substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.'" *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) (quoting *Dussouy v. Gulf Coast Inv.*

*Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). In deciding a motion to amend, the district court "may consider a variety of factors including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , and futility of the amendment." *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Mayeaux v. La. Health Serv. and Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004)). If there are substantial reasons to deny the amendment, then the court may also weigh in the movant's favor any prejudice that will result from denial of leave to amend. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981).

### B. Application

Navarre asserts that, to the extent Claremont's amendments exceed the scope of what was permitted under the court's prior ruling, leave to amend should be denied because of undue delay and futility.

#### 1. Delay

"[D]elay alone is an insufficient basis for denial of leave to amend" and the delay must instead "be ***undue***, i.e., it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayeaux*, 376 F.3d at 427 (emphasis in original). Claremont asserts additional claims based on Louisiana Civil Code article 2033, the dormant Commerce Clause, and the Louisiana Unfair Trade Practices Act. Navarre placed the validity of Claremont's contract at issue under the Louisiana State Contractors Licensing Law ("the Act") and Louisiana Civil Code article 2030 in its original complaint, filed in January 2024. *See* doc. 1, ¶¶ 50–55. Accordingly, Claremont has had notice for the last two years of the

necessity of pleading any counterclaims relating to its license and the validity of the Act. But as Claremont notes, the delays are not entirely of its own making. Navarre has amended its pleadings twice (once in response to Claremont's motion to dismiss) and filed two prior motions to dismiss against Claremont's counterclaims.[1] Docs. 3, 16, 31, 47. As outlined in Navarre's recent motion to quash, the parties have not yet completed a discovery plan. Doc. 61, att. 1, p. 2. No trial date or scheduling order has been issued, and so the court is not burdened by the addition of new claims at this point. Meanwhile, the fact that the opposing party must undertake additional discovery or invest additional resources and motion practice in the litigation is usually insufficient to warrant denial of an amendment. *Duling v. Gristede's Oper. Corp.*, 265 F.R.D. 91, 100–01 (S.D.N.Y. 2010) (collecting cases); *see, e.g.*, *Callahan v. Cheramie Boats, Inc.*, 383 F.Supp. 1217, 1222 (E.D. La. 1974) ("Shell will not suffer from this amendment, other than to be obliged to do the work normally required in answering and defending a lawsuit."). Accordingly, the delay does not serve as grounds for denying Claremont's motion at this stage of the proceedings.

   **2. Futility**

The denial of a motion to amend is not an abuse of discretion if allowing the amendment would be futile. *Stripling*, 234 F.3d at 872-73; *see also Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003). The Fifth Circuit has interpreted futility to mean "the amended complaint would fail to state a claim upon which relief could be granted" and

---

[1] Meanwhile, Claremont has also filed two motions to dismiss. Docs. 19, 41.

applies the legal standards of Rule 12(b)(6) in making such determinations. *Stripling*, 234 F.3d at 873 (citations and quotation omitted).

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished). Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court has already addressed Claremont's "interest of justice" exception under Louisiana Civil Code article 2033 in its ruling [doc. 71] on Claremont's Motion to Reconsider. The undersigned finds no basis for reconsidering.[2] Accordingly, any amendment seeking to add these claims is futile.

---

[2] Claremont adds several allegations relating to its relationship with Louisiana licensed contractor Parkcrest Builders, LLC, asserting that Parkcrest was operating under Claremont's name at all relevant times in an effort to cure Claremont's failure to obtain the required license. But the court already found that Claremont could not have complied

As referenced in the undersigned's ruling on the Motion to Reconsider, however, "[a] party who knew or should have known at the time of contracting of a defect that made the contract absolutely null may not avail himself of the nullity when the purpose of the illegal contract has been accomplished." *Maroulis v. Entergy La., LLC*, 317 So.3d 316 (La. 2021) (citing La. C. C. art. 2033, 1984 Rev. Cmt. (c)). Claremont now alleges that, "at all relevant times, Navarre knew and was aware of Claremont's Louisiana licensing status, which was a matter of public record with the LSLBC." Doc. 59, ¶ 57. The amendment is therefore within the scope of the court's prior rulings. But Revision Comment (c) applies only to the extent that "the purpose of the illegal contract has been accomplished." Under the main text of Article 2033, "[a]bsolute nullity may be raised as a defense even by a party who, at the time the contract was made, knew or should have known of the defect that makes the contract null." La. C. C. art. 2033. As illustrated in a recent case from the Louisiana First Circuit Court of Appeal, the other party's knowledge thus prevents it from recouping funds previously paid to the contractor but does not allow the contractor to pursue recovery of unpaid overhead and profit. *See Quaternary Res. Investigations, LLC v. Phillips*, 316 So.3d 448, 467–71 (La. Ct. App. 1st Cir. 2020). Accordingly, this alleged knowledge does not serve to revive Claremont's claims for breach of contract, et cetera or to enlarge its unjust enrichment claim to include overhead and profit.

Navarre also challenges Claremont's attempt to add a LUTPA claim and to contest the Louisiana licensing statutes under the dormant Commerce Clause. LUTPA prohibits

---

with the Act merely by using a supervising contractor with a valid Louisiana license, and that Claremont itself was not licensed until July 2022. Doc. 55.

"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" La. R.S. § 51:1405(A). Violations of LUTPA are determined on a case-by-case basis. *Grigsby & Assoc., Inc. v. City of Shreveport*, 294 F.Supp.3d 529, 546 (W.D. La. 2018) (citing *Volentine v. Raeford Farms of La., LLC*, 201 So.3d 325, 353 (La. Ct. App. 2d Cir. 2016)). But the court should only find a practice unfair under the statute when it "offends established public policy and is immoral, unethical, oppressive, or unscrupulous." *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (quoting *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002)). "LUTPA does not prohibit sound business practices, the exercise of permissible business judgment, or free enterprise transactions," and there is "a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So.3d 1053, 1059 (La. 2010).

  The crux of Claremont's LUTPA claim appears to be that (1) Navarre has challenged the reasonableness of Claremont's invoices, despite using those invoices to obtain a settlement on its hurricane claim from its insurer. Doc. 76, att. 2, ¶¶ 87–104. But Claremont failed to obtain an assignment of benefits that would entitle it to Navarre's proceeds. And it points to no representation by Navarre that Claremont would be reimbursed whatever the insurer paid on Navarre's claim. Instead, Navarre has alleged that the work is substandard and that it has incurred "substantial expense in completing the Project and/or finishing and/or remediating Claremont's work on the Property." Doc. 31, ¶ 11. Whether or not this allegation bears out, the court—faced regularly with such construction cases—cannot find that a dispute over invoices on a multimillion-dollar project either offends public policy or

rises to the level of immoral, unethical, oppressive, or unscrupulous conduct. Likewise, the Louisiana legislature has provided for the nullification of construction contracts with unlicensed contractors. Navarre's attempt to take advantage of the legislature's nullification provisions, which may be raised even by parties who "knew or should have known" of the defect at the time the contract was made, falls short of the high bar set by LUTPA.

Finally, Claremont attempts to bring a challenge under the dormant Commerce Clause. The Commerce Clause provides that "Congress shall have Power ... To regulate Commerce ... among the several States ...." U.S. Const., Art. I, § 8, cl. 3. From this language arises a judicial creation known as the dormant Commerce Clause, under which "states lack the power to impede interstate commerce with their own regulations." *Dickerson v. Bailey*, 336 F.3d 388, 395 (5th Cir. 2003). Courts apply a two-tiered analysis to determine whether a statute violates the dormant Commerce Clause: first, the court asks whether the law facially discriminates between in-state and out-of-state economic interests. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). "In this context, discrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." *Id.* (internal quotations omitted). Laws that discriminate in this manner are almost *per se* invalid, unless the state can show that it has no other means to advance a legitimate local purpose. *Id.* at 338–39. A law that does not overtly discriminate between in-state and out-of-state economic interests may still violate the dormant Commerce Clause if it unduly burdens interstate commerce. *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99

(1994). To this end the court applies the *Pike* balancing test and will only invalidate the law if its incidental burdens on interstate commerce are "clearly excessive in relation to the putative local benefits." *Id.* (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)). Additionally, under the canon of constitutional avoidance, "[f]ederal courts must accept a reasonable narrowing construction of a state law to preserve its constitutionality." *Hignell-Stark v. City of New Orleans*, 154 F.4th 345, 359 (5th Cir. 2025) (citing *City of El Cenizo v. Texas*, 890 F.3d 164, 182 (5th Cir. 2018)).

The challenged statutes, La. R.S. §§ 37:2158 and 2160, are not overtly discriminatory because they apply to both in-state and out-of-state contractors. In particular, La. R.S. § 37:2158 provides that no person may engage in the business of contracting or act as a contractor unless properly licensed. La. R.S. § 37:2158(A). Meanwhile, La. R.S. § 37:2160 prohibits the issuance of local building permits to contractors who are not licensed for the scope of work for which the permit is sought. La. R.S. § 37:2160(B). Claremont concedes that the statutes serve a legitimate public purpose but maintains that they are overly burdensome, particularly because they do not contain an exception for large out-of-state companies like Claremont to have their projects managed or supervised by local, licensed contractors. Doc. 59, ¶¶ 77–84.

Under the *Pike* test, the court should consider "(1) whether the law burdens interstate commerce; (2) whether there is a 'legitimate local interest' in the law; and (3) when both are present, if the extent of the burden should be tolerated based on the local interest involved, including if the interest 'could be promoted as well with a lesser impact on interstate activities.'" *Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*, 945 F.3d

206, 221 (5th Cir. 2019) (quoting *Pike*, 397 U.S. at 142). Here, Claremont cannot show that any burden on interstate commerce is **clearly** excessive in relation to the state's needs. The licensing provisions "were specifically enacted so that unqualified individuals operating in professional fields could not injure or mislead the State's citizens." *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 2007 WL 1191896, at *3 (E.D. La. Apr. 20, 2007). Review of the licensing requirements shows that they are targeted to these goals by ensuring that persons or entities acting as contractors within the state have the appropriate insurance and qualifications, and have provided sufficient information to enable a background check. *See* La. R.S. § 37:2156.1. Partnering with a "supervising" local contractor would not serve all of these interests if it allowed an out-of-state contractor with a poor history to begin bidding and working on local projects without any verification. Meanwhile, to the extent Claremont (headquartered in neighboring Texas) wished to remain ready to assist on post-disaster projects in Louisiana, it could have maintained a Louisiana commercial contractor's license in compliance with the state's longstanding laws. Under these circumstances, the contractor licensing scheme survives the *Pike* test and Claremont's dormant Commerce Clause challenge is likewise futile.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Amend [doc. 76] will be **DENIED** to the extent Claremont attempts to add new claims identified by this court as futile, as described above, and the Motion to Dismiss and Motion to Strike [doc. 63] will be **DENIED AS MOOT**. Claremont will be directed to file a conforming Amended Counterclaim and a scheduling order will issue setting this matter for trial on August 17, 2026.

**THUS DONE AND SIGNED** in Chambers on the 3rd day of December, 2025.

```
            JAMES D. CAIN, JR.
        UNITED STATES DISTRICT JUDGE
```